Filed 4/6/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B342239 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A900447) |
| v. | |
| LAVELL TYRONE PLAYER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Defendant Lavell Tyrone Player appeals from the denial of his petition for resentencing under Penal Code[1] former section 1170.95, now renumbered section 1172.6.  In defendant's last appeal, we held substantial evidence did not support the resentencing court's finding defendant aided and abetted murder, and remanded for consideration of the alternative theories that defendant was the actual killer or a major participant in the underlying robbery acting with reckless disregard for human life.  Following an evidentiary hearing, the resentencing court found defendant guilty beyond a reasonable doubt under both alternative theories, and therefore ineligible for resentencing.

On appeal, defendant argues the jury's findings at his trial collaterally estopped the resentencing court from finding he was the actual killer.  The jury found not true allegations that defendant personally used a firearm, and also found not true a robbery special circumstance that, as the jury was instructed, required a finding that defendant personally killed the victim.  Defendant further argues substantial evidence did not support either the actual-killer or major participant/reckless indifference findings.

Our Supreme Court in *People v. Santamaria* (1994) 8 Cal.4th 903 (*Santamaria*) held that a jury's not-true finding on a weapon use enhancement was not equivalent to an affirmative finding the defendant was not guilty as the actual killer, and therefore the not-true finding did not preclude the prosecution from arguing or offering evidence on retrial the defendant personally killed the victim.  (*Id.* at pp. 917–920.)  The high court further held collateral estoppel did not apply to the jury's not-

---

[1] Unspecified statutory citations are to the Penal Code.

true finding because weapon use is not an "ultimate fact" of murder. (*Id.* at p. 922.)

In *People v. Hart* (2025) 113 Cal.App.5th 1099 (*Hart*), Division One of the Fourth District Court of Appeal concluded *Santamaria*'s collateral estoppel analysis applies to section 1172.6 proceedings, and therefore a jury's not-true finding on a personal firearm use allegation did not preclude the resentencing court from finding the defendant guilty as the actual killer. (*Hart*, at p. 1115.) In so holding, *Hart* disagreed with prior appellate opinions concluding a jury's not-true findings are preclusive in section 1172.6 proceedings.

We agree with *Hart* that *Santamaria* controls, and therefore hold the jury's not-true findings on the weapon enhancement and special circumstance did not preclude the resentencing court from finding defendant was the actual killer. We further find substantial evidence supported that finding. We therefore do not reach defendant's challenges to the resentencing court's finding that he was a major participant acting with reckless indifference.

Accordingly, we affirm.

## FACTUAL BACKGROUND

We summarize the witness testimony from defendant's trial relevant to the issues on appeal.

### 1. *Carolyn Spence's testimony*

Around 3:00 a.m. on December 19, 1981, Toney Lewis and Carolyn Spence arrived at a Denny's parking lot in Lewis's van. As they were getting out of the van, two men approached. One, who did not appear to be armed, demanded Spence's purse. The

3

second man, who was holding a gun, demanded Lewis's wallet and leather coat.

The man who had taken Spence's purse told the man with the gun to take the van. The gunman pushed Lewis back and snatched the gold chains from Lewis's neck. The gunman said, "That's all right, mother-fucker. You are going to die, anyway."

The gunman pulled the key from the van's ignition. When Lewis protested, the gunman shot him. Lewis died from the wound.

At trial, Spence initially identified defendant as the gunman. On cross-examination, however, she acknowledged that in a prior photographic lineup, and in two in-person lineups, she had identified defendant's brother Marcus[2] as the gunman. She also acknowledged on cross-examination that at the preliminary hearing, at which both defendant and Marcus were present, she first identified defendant as the gunman, but upon seeing Marcus, identified him as the gunman and said she was mistaken when she identified defendant.

After acknowledging at trial these prior identifications of Marcus as the gunman, Spence stated that Marcus was the gunman and recanted her identification of defendant.

Spence also testified that as a police sergeant was driving her home after one of the lineups in which she had identified Marcus, she told the sergeant one of the other people in the lineup looked like someone she had seen before. The sergeant asked if the person she recognized was present when Lewis was

---

[2] For clarity, we refer to defendant's family members, who share his last name, by their first names. By doing so, we mean no disrespect.

4

shot, and Spence said she did not think so. She later learned the person she recognized was defendant.

## 2. *Walter Fonteno's testimony*

Walter Fonteno admitted participating in the robbery of Lewis and Spence, and testified in exchange for a plea arrangement in which he would serve five years in prison.

On December 18, 1981, Fonteno was at the apartment of Andre Davis along with defendant and Marcus. Marcus suggested they "go make some money," and Fonteno and defendant agreed. The four men went outside and Marcus retrieved a gun from his car. Defendant asked if the gun worked. Marcus fired the gun into a dirt field to demonstrate it was functional.[3]

Defendant, Marcus, and Fonteno drove in Marcus's car to a gas station near the Denny's. Marcus said, "Let's go down there by Denny's, go down there; people got some bank down there." Defendant asked Marcus for the gun and Marcus gave it to him.

When the men saw Lewis's van pull into the Denny's parking lot, Marcus said, "Get them." Defendant climbed over the fence separating the gas station from the Denny's parking lot and said, "Come on." At Marcus's urging, Fonteno climbed over the fence after defendant.

Fonteno took Spence's purse as defendant confronted Lewis. Marcus shouted from the fence, "Take the van." Defendant told Lewis to get out of the vehicle. Lewis said no and

---

[3] Davis also testified, corroborating that Marcus had suggested they "get some money," retrieved a gun from his car, and fired it. Davis went back to his apartment after Marcus tested the gun and did not participate in the robbery.

reached for the dashboard or glove compartment. Fonteno told defendant to forget the van. Defendant told Lewis to stop moving but he did not stop. Defendant shot Lewis. Fonteno asked why he had done that, and defendant said Lewis was reaching for a gun.

Defendant and Fonteno ran away, eventually meeting up with Marcus back at Davis's apartment. Fonteno saw that defendant had a gold chain in his hand.

Months later, defendant told Fonteno that if the case went too far, he would tell the authorities he shot Lewis, so that Fonteno and Marcus could go free.

Asked whether prior to the robbery there were any discussions about killing anyone, Fonteno said no, and that he did not think anyone would be killed. The shooting surprised him.

### 3. *Annette Aldridge's testimony*

Annette Aldridge was Marcus's girlfriend and mother of his children. Sometime after Lewis's death, defendant told her Marcus was not involved in a murder. On another occasion, defendant said that everyone knew that "he did it." Defendant said he wanted to find Spence's address so he could scare her and let her know the wrong person (presumably Marcus) was in jail. Aldredge told the police that defendant had told her, "I am the one that killed the guy behind Denny's."

### 4. *Tylon Player's testimony*

Tylon is defendant's and Marcus's sister. When Marcus was arrested, defendant said he had to do something about it, because Marcus was not the one who committed the murder. He said he would scare "the girl" so she would not be a witness

6

against Marcus.  Defendant said he knew who committed the murder, but did not say who.  He said he was the only one who knew what happened, and Marcus was not the killer.

## PROCEDURAL HISTORY

### A.    Conviction and direct appeal (*Player I*)

The People charged defendant with Lewis's murder, and alleged the special circumstance that the murder was committed during the commission of a robbery or attempted robbery.  The People further charged defendant with the robbery of Spence and attempted robbery of Lewis.  On all counts, the People alleged defendant personally used a firearm and that a principal was armed with a firearm.

Defendant was tried in 1982.  The jury was instructed, inter alia, on aiding and abetting, murder, and felony murder under then-current law.  The jury further was instructed that to find the robbery special circumstance true, it must find "the murder was committed while the defendant was engaged in the commission or attempted commission of a robbery," "the murder was committed in order to carry out or advance the commission of the crime of [r]obbery or to facilitate the escape therefrom or to avoid detection," and "the defendant personally committed the murder."  Echoing the last point, the instruction added that if the jury found that "someone other than the defendant . . . personally killed the victim, . . . you must find the special circumstance not true."[4]

---

[4] The parties agree the robbery special circumstance does not in fact require a finding the defendant personally killed the victim, and the trial court erred in providing that instruction.

The jury convicted defendant of murder, robbery, and attempted robbery, and found true the allegation that a principal was armed with a firearm. The jury found not true the robbery special circumstance and allegation of personal use of a firearm. The trial court sentenced defendant to 26 years to life.

On direct appeal, we held the murder verdict was supported by substantial evidence. "[W]e find sufficient evidence of [Player]'s knowledge of the unlawful purpose of the act proposed by Marcus, namely to commit a robbery, and his consent to participate as evidenced by his affirmative response to Marcus' suggestion to go make some money. [¶] [Player was] obviously aware that one of [the assailants] was armed with a weapon which had been test fired." (*People v. Player* (May 22, 1984, 2d. Crim. No. 43957) [nonpub. opn.] at p. 10 (*Player I*).) "[Player's] intentional presence in a situation in which he was part of a planned armed robbery, where one of the assailants told the victim 'you're going to die, anyway,' coupled with his knowledge that the threat could be carried out with an operable weapon, shows his knowledge of the intent and purpose of killing the victim Lewis." (*Id.* at pp. 11–12.) "[T]he inescapable conclusion is that the jury decided that [Player] was present, participated in the robbery and the shooting and therefore [is] guilty of murder, at least as an aider or abettor." (*Id.* at p. 15.)

We acknowledged the jury had received an aider and abettor instruction held erroneous under *People v. Beeman* (1984) 35 Cal.3d 547. Specifically, the jury had been instructed an aider and abettor must have knowledge of the perpetrator's unlawful purpose, but had not been additionally instructed that the aider and abettor must also act with the intent or purpose of committing, encouraging, or facilitating the commission of the

8

offense.  Because defendant had not put his intent at issue at trial, however, and therefore "there was no conflicting evidence presented as to appellant's intent," we held any instructional error was harmless.  (*Player I*, *supra*, 2d Crim. No. 43957 at pp. 15–16.)

We further held the trial court properly denied motions to suppress Fonteno's extrajudicial statements and trial testimony.  Because the verdict did not specify the degree of murder, we deemed the crime to be second degree.  On remand, defendant was resentenced to 16 years to life.

## B.    Resentencing petition and *Player II*

On December 31, 2018, defendant filed a petition for resentencing pursuant to former section 1170.95, claiming that he was convicted of murder based on a felony-murder theory. The People filed an opposition supported by our opinion on direct appeal, the preliminary hearing, trial transcripts, and the jury instructions.

The resentencing court held a hearing on whether defendant made a prima facie showing that he fell within the provisions of former section 1170.95.  The prosecutor argued, in part, that *Player I* concluded defendant was an aider and abettor. The court agreed and quoted *Player I*'s conclusion that Player had knowledge of the intent to kill the victim.  The court then stated that it was "very clear from the facts as outlined not just in the trial transcripts but in the Court of Appeal's opinion" that "there's more than ample evidence here to . . . find he was the aider and abettor at the very least with a stated purpose and intent to kill."

Defendant appealed and we reversed.  (*People v. Player* (June 25, 2021, B303259) [nonpub. opn.] (*Player II*).)  We

9

disagreed with the resentencing court's reading of *Player I*: "We did not conclude [in *Player I*] that Player had the specific intent to kill. Rather, our holding suggests that the facts supported a verdict based on application of the felony-murder rule or the natural and probable consequences doctrine." (*Player II*, *supra*, B303259.) We further held that because the jury had received an erroneous instruction under *Beeman*, "[W]e cannot rely on the instructions to conclude the jury found Player guilty under a valid theory of direct aider and abettor liability. Thus, nothing in the record of conviction indicates that Player was *necessarily* convicted of murder based on a theory that he was the actual shooter, harbored the intent to kill, or was a major participant in the robbery and acted with reckless indifference to human life." (*Ibid.*)

We continued, "In arriving at its conclusion that our opinion and the trial transcripts showed that Player was convicted as a direct aider and abettor, the resentencing court necessarily engaged in factfinding at the prima facie stage, which it was not authorized to do." (*Player II*, *supra*, B303259.) We remanded for the resentencing court to issue an order to show cause and hold an evidentiary hearing.

## C. Evidentiary hearing and *Player III*

On remand, the parties submitted additional briefing to the resentencing court. The prosecutor argued defendant was guilty either as the actual killer, a direct aider and abettor, or as a major participant in the robbery who acted with reckless indifference to life.

Following a hearing at which the parties presented argument but no additional evidence, the resentencing court issued a written order denying the resentencing petition. The

10

court quoted extensively from the factual summary and legal discussion in *Player I*, culminating with *Player I*'s statement that the evidence " [']show[ed defendant's] knowledge of the intent and purpose of killing the victim, Lewis['] " (boldface & italics omitted), and " '[t]he inescapable conclusion is that the jury decided that Player was present, participated in the robbery and the shooting and therefore [is] guilty of murder, at least as an aider or abettor.' " The resentencing court then stated, "Based on the record of conviction, Petitioner is clearly guilty of murder as an aider and abettor. The court finds beyond a reasonable doubt that Petitioner is not entitled to have his murder conviction vacated under section 1170.95(d)(3)."

Defendant appealed again, and we reversed. (*People v. Player* (Dec. 28, 2023, B321656) [nonpub. opn.] (*Player III*).) We held the record lacked substantial evidence that defendant was a direct aider and abettor, the theory on which the resentencing court relied. In particular, we concluded there was no evidence defendant intended to encourage or facilitate the shooting, or shared the shooter's intent to kill. We further concluded, to the extent the resentencing court read *Player I* to hold there was substantial evidence of aiding and abetting, our decision in *Player II* foreclosed that reading.

We remanded for the resentencing court to consider the alternative theories advanced by the prosecution, namely that defendant was guilty as the actual shooter or as a major participant in the robbery acting with reckless indifference to life.

D.     **Second evidentiary hearing**

The parties filed additional briefs on remand. Defendant argued that because the jury had not found true the robbery special circumstance or the allegation defendant personally used

11

a firearm, principles of collateral estoppel precluded the prosecution from arguing defendant was the actual killer of Lewis. Defendant further argued the evidence did not support the alternative theory that defendant was a major participant in the robbery who acted with reckless indifference to life.

In its brief, the prosecution observed *Player III* did not foreclose the possibility defendant could be convicted as the actual killer. The prosecution was uncertain, however, how this court might rule on the preclusive effect of the jury's not-true finding on the weapon enhancement. The prosecution therefore opted to focus on the theory that defendant was a major participant acting with reckless indifference. As to that theory, the prosecution argued the evidence supported it.

The resentencing court held an evidentiary hearing on October 21, 2024. The parties presented no new evidence, instead making arguments based on the trial transcript.

The resentencing court issued an oral ruling on November 1, 2024. On the issue of collateral estoppel, the resentencing court found the Supreme Court's decision in *Santamaria* to be on point. Under that authority, the court concluded the jury's verdict did not preclude the resentencing court from finding defendant was the actual killer.

Turning to the evidence, the court found Fonteno's testimony credible. The court found Spence likely was in shock at the time of the crime and was confused about what she saw and heard.

The court found beyond a reasonable doubt that defendant could be convicted under current law either as the actual killer or as a major participant acting with reckless indifference. Accordingly, the court denied defendant's resentencing petition.

12

Defendant timely appealed.

## DISCUSSION

### A.     Senate Bill No. 1437

"Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) (Stats. 2018, ch. 1015) amended sections 188 and 189 of the Penal Code to 'eliminate[ ] natural and probable consequences liability for murder as it applies to aiding and abetting, and [to] limit[ ] the scope of the felony-murder rule.' [Citation.]" (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1173 (*Lee*).)

Relevant to this appeal are Senate Bill No. 1437's amendments to the felony murder rule. "[U]nder the felony-murder rule as it existed prior to Senate Bill No. 1437, a defendant who committed a statutorily enumerated felony such as robbery could be convicted of murder for a killing during the felony without further examination of their mental state." (*People v. Garcia* (2022) 82 Cal.App.5th 956, 964–965.)  After Senate Bill No. 1437, however, "[a] participant in the perpetration or attempted perpetration of [an enumerated felony, including robbery] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1)  The person was the actual killer.  [¶]  (2)  The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e); see *Garcia*, at p. 965.)

Assembly Bill No. 1437 also added former section 1170.95, now numbered section 1172.6, "which creates a procedure for

13

convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 957.) "If a petitioner makes a prima facie showing of relief under section 1172.6 — that is, a showing that the petitioner was convicted of murder, attempted murder, or manslaughter under a theory no longer valid under the amended Penal Code — the resentencing court must issue an order to show cause for an evidentiary hearing. [Citations.] At that hearing, the prosecution must prove beyond a reasonable doubt that the petitioner remains guilty of murder or attempted murder despite the amendments to sections 188 and 189." (*Lee*, *supra*, 95 Cal.App.5th at p. 1174; see § 1172.6, subds. (c), (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).)

At the evidentiary hearing, "[t]he admission of evidence . . . shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed," with exceptions not relevant here. (§ 1172.6, subd. (d)(3).) "The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (*Ibid.*)

## B.      The Jury's Verdict Did Not Preclude the Resentencing Court From Finding Defendant Was the Actual Killer

Defendant argues, as he did below, that the jury's not-true findings on the allegation he personally used a firearm and on the robbery special circumstance, which included as an element that defendant personally killed the victim, barred the

resentencing court under principles of collateral estoppel from finding him guilty as the actual killer. We review de novo a lower court's application of collateral estoppel. (*People v. Jimenez* (2024) 103 Cal.App.5th 994, 1004.) We agree with the resentencing court that the Supreme Court's *Santamaria* decision defeats defendant's argument.

We begin by summarizing the applicable case law on which we base our holding. This includes the two Supreme Court cases addressing collateral estoppel in the context of section 1172.6, *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*) and *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*), as well as *Santamaria* and *Hart*. We then explain why we conclude those authorities control here. Finally, we address the contrary authority cited by defendant, as well as defendant's arguments, and explain why we do not find them persuasive.

### 1. Applicable case law

#### a. *Strong*

*Strong* concerned the preclusive effect in a section 1172.6 proceeding of a jury's true finding on a felony murder special circumstance, which requires a finding the defendant was a major participant in the underlying felony who acted with reckless indifference to human life. (*Strong*, *supra*, 13 Cal.5th at p. 703; see § 190.2, subd. (d).) Strong argued the true finding in his case should not preclude relief under section 1172.6, because his conviction predated the Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, "which for the first time provided substantial guidance on the meaning of" "major participant" and "reckless indifference to human life." (*Ibid.*)

15

Our high court rejected arguments that the text of section 1172.6 itself resolved the preclusion question.  (*Strong*, *supra*, 13 Cal.5th at pp. 711–712, 714–715; see *id.* at p. 715 ["the text of section 1172.6 does not speak in any direct way to the issue before us"].)  It therefore "turn[ed] to background principles for guidance," namely "the doctrine of issue preclusion, also known as collateral estoppel." (*Strong*, at p. 715.)  The court explained, "This common law doctrine is 'grounded on the premise that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." ' [Citation.]  The doctrine ' "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." ' [Citation.]" (*Id.* at pp. 715–716.)

The high court reiterated the " 'threshold requirements' " for issue preclusion:  " 'First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' [Citation.]" (*Strong*, *supra*, 13 Cal.5th at p. 716.)

The court emphasized these threshold requirements, while "necessary," "are not always sufficient: 'Even if the[ ] threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles' of promoting efficiency while ensuring fairness to the parties." (*Strong*, *supra*, 13 Cal.5th at p. 716.)

16

Applying these principles to the case at hand, our high court concluded a jury's special circumstance findings "*can* have preclusive effect." (*Strong*, *supra*, 13 Cal.5th at p. 716.) Collateral estoppel did not apply under the circumstances of the case, however, because of the "well-settled equitable exception to the general rule . . . that preclusion does not apply when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue." (*Ibid*.) "*Banks* and *Clark* represent the sort of significant change that has traditionally been thought to warrant reexamination of an earlier-litigated issue." (*Strong*, at p. 717.)

### b. *Curiel*

*Curiel* addressed "the effect of the jury's true finding on the gang-murder special circumstance, specifically its finding that Curiel intended to kill, on his ability to state a prima facie case for relief under Senate Bill 1437." (*Curiel*, *supra*, 15 Cal.5th at pp. 440–441.) In light of *Strong*, the parties in *Curiel* "frame[d their] argument in terms of issue preclusion." (*Curiel*, at p. 451.) Our high court declined to "decid[e] whether this doctrine applies wholesale to criminal resentencing proceedings generally, or even section 1172.6 proceedings specifically." (*Curiel*, at p. 451.) Nevertheless, "we continue to believe its contours are informative in this context and rely on them again here." (*Ibid*.)

Evaluating the elements of collateral estoppel, our high court held "Curiel's intent to kill was actually litigated and necessarily decided." (*Curiel*, *supra*, 15 Cal.5th at p. 452.) "The prosecution alleged the gang-murder special circumstance, which included an intent to kill element, and Curiel put all elements of the special circumstance at issue by pleading not guilty." (*Ibid*.) The jury found the special circumstance true, "necessarily

17

f[inding] beyond a reasonable doubt that Curiel intended to kill." (*Ibid.*)

The Supreme Court therefore "conclude[d] the jury's intent to kill finding meets the traditional threshold requirements for issue preclusion." (*Curiel*, *supra*, 15 Cal.5th at p. 453.) Unlike in *Strong*, there was no "change in the law [of the gang-murder special circumstance] that would justify a departure from the general rule of issue preclusion." (*Curiel*, at p. 455.) Thus, the resentencing court "properly g[ave]" "the jury's intent to kill finding . . . preclusive effect in the resentencing proceedings below, i.e., Curiel was bound by the jury's finding for purposes of assessing his petition." (*Id.* at p. 441.)

The Supreme Court observed its holding "is consistent with our observation in *Strong* that a relevant jury finding is generally preclusive in section 1172.6 proceedings, i.e., it 'ordinarily establish[es] a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude[s] the defendant from making a prima facie case for relief.' [Citation.] Indeed, it is difficult to foresee a situation in which a relevant jury finding, embodied in a final criminal judgment, would not meet the traditional elements of issue preclusion." (*Curiel*, *supra*, 15 Cal.5th at pp. 453–454.)

The high court nonetheless concluded that, although the jury's finding was determinative as to the defendant's intent to kill, that finding "does not itself conclusively establish that a petitioner is ineligible for relief." (*Curiel*, *supra*, 15 Cal.5th at p. 461.) This is because intent to kill is "only one element" of murder, and "does not by itself establish any valid theory of liability." (*Id.* at p. 463.)

### c.     *Santamaria*

*Santamaria*, issued two decades before Senate Bill No. 1437 was enacted, did not involve collateral estoppel in a

18

resentencing proceeding, but in a retrial following reversal of a conviction on appeal.  (*Santamaria*, *supra*, 8 Cal.4th at p. 908.)

Santamaria was charged with murder and robbery, with allegations of a robbery-murder special circumstance and that Santamaria personally used a knife in committing the offenses. (*Santamaria*, *supra*, 8 Cal.4th at p. 908.)  The main prosecution witness, Anthony Nubla, had pleaded guilty to accessory to murder and agreed to cooperate with the prosecution.  (*Id.* at pp. 908–909.)  Nubla testified he saw Santamaria "hugging [the victim's] neck and stabbing him" while Santamaria and the victim were sitting in Nubla's car.  (*Id.* at p. 909.)  Santamaria then took the victim's money and jewelry and drove Nubla's car twice over the victim's body.  (*Ibid.*)  Nubla and Santamaria cleaned the car, and a week later pawned the victim's jewelry. (*Ibid.*)

The jury convicted Santamaria of murder and robbery, and found true the robbery-murder special circumstance, but found not true the allegation Santamaria personally used a knife. (*Santamaria*, *supra*, 8 Cal.4th at p. 909.)  On appeal, the Court of Appeal reversed the judgment, concluding an 11-day continuance during jury deliberations was prejudicial error.  (*Ibid.*)

On remand, the People filed a new information that omitted the knife allegation.  (*Santamaria*, *supra*, 8 Cal.4th at p. 909.)  "Defendant promptly moved, 'based on double jeopardy clause, to prohibit retrial of defendant for use of dangerous weapon, to limit evidence and preclude prosecution's reliance on theory adjudicated in defendant's favor at first trial.' "  (*Ibid.*) The trial court "largely granted the motion," and "precluded the prosecution 'from retrying the defendant on the theory that he personally used the knife during the killing.' "  (*Ibid.*)  The court further ruled the jury would " 'be instructed at appropriate intervals throughout the case that the defendant did not

19

personally use a knife during the killing of the victim.' " (*Ibid*.)
The prosecution "stated it was unable to proceed in light of the
ruling," and the trial court dismissed the case.  (*Id*. at p. 910.)
The People appealed, and the Court of Appeal affirmed, "finding
that 'the negative enhancement finding precludes the People
from retrying defendant on the theory he personally killed the
victim with a knife.' " (*Ibid*.)

Our Supreme Court granted review and reversed the Court
of Appeal.  (*Santamaria, supra*, 8 Cal.4th at p. 908.)  Quoting the
United States Supreme Court, our high court explained collateral
estoppel " 'means simply that when an issue of ultimate fact has
once been determined by a valid and final judgment, that issue
cannot again be litigated between the same parties in any future
lawsuit.' " (*Id*. at p. 912, quoting *Ashe v. Swenson* (1970) 397 U.S.
436, 443.)  " '[T]he rule of collateral estoppel in criminal cases
is not to be applied with the hypertechnical and archaic approach
of a 19th century pleading book, but with realism and
rationality.' " (*Santamaria*, at p. 912, quoting *Ashe*, at p. 444.)

Our Supreme Court acknowledged "the jury's 'not true'
finding on the knife-use enhancement allegation precludes retrial
of that allegation." (*Santamaria, supra*, 8 Cal.4th at p. 910.)  As
to the murder change, however, "[c]ollateral estoppel does not
apply for two reasons:  (1) the issue sought to be precluded in the
murder trial is not identical to any issue necessarily decided by
the weapon enhancement verdict; and (2) whether defendant
used a knife is not an 'ultimate issue' of the murder charge." (*Id*.
at p. 917.)

As for why the issue sought to be precluded was not
necessarily decided in the first trial, the high court observed that
the jury acquitted Santamaria of the knife allegation while
convicting him of the robbery and murder charges, and "[t]he

20

pertinent issue decided by each verdict was quite different." (*Santamaria*, *supra*, 8 Cal.4th at p. 917.)

The court noted that under California law, "as long as each juror is convinced beyond a reasonable doubt that defendant is guilty of murder as that offense is defined by statute, it need not decide unanimously by which theory he is guilty. [Citations.] More specifically, the jury need not decide unanimously whether defendant was guilty as the aider and abettor or as the direct perpetrator." (*Santamaria*, *supra*, 8 Cal.4th at p. 918.) Although the jury unanimously found the knife allegation not true, this "shows only that there was a reasonable doubt in the minds of the jurors that defendant specifically used a knife. *It does not show the reverse, that the jury specifically found defendant was an aider and abettor.*" (*Id.* at p. 919.) "The jury may merely have believed, and most likely did believe, that defendant was guilty of murder as either a personal knife user or an aider and abettor but *it may have been uncertain exactly which role defendant played.*" (*Ibid.*) "There may be a reasonable doubt that the defendant was the direct perpetrator, and a similar doubt that he was the aider and abettor, but no such doubt that he was one or the other." (*Ibid.*) "To go further and conclude that the jury *specifically* found defendant did not use the knife would not apply the collateral estoppel rule with 'realism and rationality.' [Citation.]" (*Id.* at p. 920.)

The court continued, "Although defendant claims he merely seeks to preclude the theory that he used the knife, he necessarily is claiming more; he seeks to preclude the theory, and evidence to support the theory, that he *either* used the knife *or* aided and abetted the one who did. This, however, is not the issue decided regarding the enhancement allegation. Whether defendant specifically used a knife is one question; we may assume the prosecution did not prove that beyond a reasonable

doubt, which explains the not true enhancement verdict. Whether defendant committed murder by either using a knife or aiding and abetting the one who did is quite a different question; the prosecution *did* prove that to the jury's satisfaction." (*Santamaria*, *supra*, 8 Cal.4th at p. 920.)

The court acknowledged it was "theoretically possible the jury concluded defendant was specifically the aider and abettor," "[b]ut that is not the test. Setting the inquiry ' "in a practical frame" ' and viewing it ' "with an eye to all the circumstances of the proceedings" ' [citation], we conclude the jury did not ' "necessarily decide[ ]" ' [citations] that defendant was the aider and abettor, only that it had doubts as to his exact role." (*Santamaria*, *supra*, 8 Cal.4th at p. 920.)

Turning to the second reason collateral estoppel did not apply — that knife use was "not an ultimate fact of *murder*" — the high court relied on federal case law holding that an acquittal has preclusive effect in a retrial or subsequent prosecution only " 'when the relevant issue is "ultimate" in the subsequent prosecution, i.e., when the issue must be proven beyond a reasonable doubt.' " (*Santamaria*, *supra*, 8 Cal.4th at pp. 921, 922.) "Evidence that defendant personally used a knife was highly relevant to show that he was guilty of murder as that offense is defined by statute. That evidence, *together with the evidence that if he did not use a knife, he was guilty as the aider and abettor,* combined to permit the murder conviction. But the specific fact of personal use does *not* have to be proven beyond a reasonable doubt to find defendant guilty of murder. Hence, personal use is not an 'ultimate fact' of murder." (*Id.* at p. 922.)

In summary, our Supreme Court stated, "The first jury, having heard and considered all the evidence, properly convicted defendant of murder even though it had a reasonable doubt who actually wielded the knife. The second jury should be allowed to

do the same.  A reasonable doubt that defendant used the knife precluded the use enhancement; it did not prevent conviction of murder at the first trial on the combined theory that he *either* used the knife *or* aided and abetted the one who did.  It should not preclude conviction at retrial on the same basis." (*Santamaria*, *supra*, 8 Cal.4th at p. 926.)

### d.    Hart

Hart, a defendant in a section 1172.6 proceeding, argued his jury's not-true finding on an allegation he personally used a firearm precluded the resentencing court from relying on a theory that he was the shooter.  (*Hart*, *supra*, 113 Cal.App.5th at p. 1104.)  The resentencing court disagreed, and concluded Hart was the actual shooter, relying, inter alia, on a comprehensive risk assessment Hart underwent while incarcerated in which he admitted to shooting the victim.  (*Id.* at p. 1105.)

The Court of Appeal affirmed.  The court focused on *Santamaria*'s "ultimate fact" requirement "because it most clearly dictates the result."  (*Hart*, *supra*, 113 Cal.App.5th at p. 1110.)  In line with *Santamaria*, the court concluded Hart's "personal use of [a] gun is not an 'ultimate fact' that has to be proven beyond a reasonable doubt to find him guilty of murder." (*Hart*, at p. 1109.)  The court explained, "At an evidentiary hearing in a section 1172.6 proceeding, the question before the court is the same as it would be at a retrial for the murder: whether the petitioner is guilty of murder beyond a reasonable doubt under current law.  [Citation.]  Under current law, a participant in a robbery may be guilty of felony murder as the 'actual killer' without using a firearm [citation], or alternatively, as either an aider and abettor who acted with intent to kill and assisted the actual killer in committing the murder [citation] or a major participant who acted with reckless indifference to human

23

life [citation]. Because 'the specific fact of personal use does *not* have to be proven beyond a reasonable doubt to find defendant guilty of murder' under any of these theories, 'personal use is not an "ultimate fact" of murder' and 'collateral estoppel does not apply.' [Citation.]" (*Id.* at pp. 1111–1112.)

The court further observed, "A contrary result would effectively give section 1172.6 petitioners greater double jeopardy protection by way of issue preclusion than criminal defendants on trial for murder. If this were a retrial rather than a section 1172.6 proceeding, the jury's not true finding on the firearm use enhancement would not preclude reliance on an actual killer theory under the holding of *Santamaria.* But it would make little sense to afford section 1172.6 petitioners greater protection against a redetermination of factual issues than they would enjoy in a criminal trial. Double jeopardy concerns are not even implicated in a section 1172.6 proceeding because the relief provided is a legislative act of lenity designed to give convicted defendants the benefit of ameliorative changes in the law of murder, and it does not result in a new trial or increased punishment." (*Hart, supra*, 113 Cal.App.5th at p. 1112.)

The *Hart* court disagreed with prior appellate decisions applying preclusive effect to acquittals and not-true findings in section 1172.6 proceedings, largely because those courts had not considered *Santamaria*'s ultimate fact requirement. (*Hart, supra*, 113 Cal.App.5th at p. 1115.)

### 2.    Analysis

We agree with *Hart* that *Santamaria* applies to section 1172.6 proceedings. *Strong* and *Curiel* establish that when determining the preclusive effect of jury findings on section 1172.6 proceedings, courts are guided by general

24

principles of collateral estoppel.  *Santamaria* is binding Supreme Court authority applying those general principles to a jury's not-true findings.

We recognize that *Curiel*, unlike *Santamaria*, afforded preclusive effect to a jury finding.  *Strong* similarly held jury findings could have preclusive effect, albeit not in that case because of a significant change in the law.  Defendant suggests these cases indicate *Santamaria* does not apply to section 1172.6 proceedings.  We discern no tension among these authorities.

In *Curiel* and *Strong*, the findings at issue were *true* findings, meaning the juries had found beyond a reasonable doubt Curiel intended to kill the victim and Strong was a major participant acting with reckless indifference to human life.  *Santamaria*, in contrast, concerned a *not-true* finding.  That finding, as explained by our Supreme Court, did not prove the jury found the alleged knife use did *not* happen — that is, that Santamaria was not the actual killer but only an aider and abettor.  This is because it was possible the jury, though convinced of Santamaria's guilt for murder, simply could not decide whether he personally killed the victim or aided and abetted the actual killer.  (*Santamaria*, *supra*, 8 Cal.4th at p. 919.)  The distinction between true and not-true findings explains why the jury findings were not preclusive in *Santamaria* but were in *Curiel* and *Strong*.

Like *Hart*, we do not think *Santamaria* can be distinguished on the basis that *Santamaria* concerned a retrial rather than a resentencing proceeding under section 1172.6.  As *Hart* correctly reasons, "At an evidentiary hearing in a section 1172.6 proceeding, the question before the court is the same as it would be at a retrial for the murder:  whether the petitioner is guilty of murder beyond a reasonable doubt under current law." (*Hart*, *supra*, 113 Cal.App.5th at p. 1111.)

25

We are additionally persuaded by *Hart*'s observation that, were we to conclude *Santamaria*, which unquestionably applies to criminal trials, does not also apply to section 1172.6 proceedings, we would be "afford[ing] section 1172.6 petitioners greater protection against a redetermination of factual issues than they would enjoy in a criminal trial." (*Hart, supra,* 113 Cal.App.5th at p. 1112.) This "would make little sense" when section 1172.6 defendants are, as a general matter, entitled to *fewer* constitutional protections than defendants in criminal trials. (*Ibid.*; see *People v. Hill* (2024) 100 Cal.App.5th 1055, 1068 [§ 1172.6 petitioners have no constitutional right to jury or protection from double jeopardy].)

Accordingly, under *Santamaria* and *Hart*, we hold the jury's not-true finding on the firearm enhancement did not preclude the resentencing court from finding defendant was the actual killer. We reach the same conclusion as to the jury's not-true finding on the robbery special circumstance containing an actual-killer requirement. Under *Santamaria*, that not-true finding, like the not-true finding on the firearm enhancement, does not establish the jury necessarily found defendant did not personally kill the victim. Akin to *Santamaria*, the jury might simply have been unsure what role defendant played in the killing, and found the special circumstance not true on that basis.

### 3.    Contrary authority

As *Hart* recognizes, several cases have held jury acquittals and not-true findings have preclusive effect in section 1172.6 proceedings — indeed, it appears *Hart* is the first published decision concluding otherwise. (See *Hart, supra,* 113 Cal.App.5th at pp. 1112–1115.) As we explain, we do not find these contrary authorities, and their attempts to distinguish *Santamaria*, persuasive. *People v. Cooper* (2022) 77 Cal.App.5th 393 (*Cooper*)

26

requires the most discussion, and we devote a section to it and the authorities on which it relies. We follow that with a section discussing the other authorities cited by defendant.

### a. *Cooper*

*Cooper* addressed whether a defendant's acquittal of possession of a firearm by a felon precluded the resentencing court under section 1172.6 (then numbered 1170.95) from basing a finding of major participant/reckless indifference "on its belief that Cooper possessed and fired a gun." (*Cooper*, *supra*, 77 Cal.App.5th at pp. 397–398.) *Cooper* predated *Strong* and *Curiel*, and the Court of Appeal expressed uncertainty whether principles of collateral estoppel applied. (*Cooper*, at p. 413.) The court nonetheless agreed the jury's acquittal had preclusive effect under "established case law in the analogous context of petitions for resentencing under the Three Strikes Reform Act of 2012," also known as Proposition 36. (*Cooper*, at p. 413.) In support, *Cooper* cited *People v. Arevalo* (2016) 244 Cal.App.4th 836 (*Arevalo*) and *People v. Piper* (2018) 25 Cal.App.5th 1007. (*Cooper*, at p. 413.)

*Hart* interpreted *Cooper* as "appl[ying] a theory of preclusion derived from Proposition 36 case law rather than issue preclusion." (See *Hart*, *supra*, 113 Cal.App.5th at p. 1114.) As we explain, in our view, *Arevalo* and *Piper*, the cases *Cooper* cites, do *not* establish a doctrine of preclusion distinct from traditional issue preclusion.[5] Further, *Arevalo* and *Piper* are inapposite

---

[5] Even if arguendo *Arevalo* and *Piper* had established a doctrine of preclusion distinct from collateral estoppel, applying that doctrine to section 1172.6 arguably would be in tension with *Strong* and *Curiel*, which applied traditional principles of

27

because the factual questions at issue in those cases differ from those in the instant case.

#### i.     *Proposition 36*

Proposition 36 amended the Three Strikes law to reduce the penalty for defendants whose third strike offense is neither serious nor violent, subject to certain exceptions.  (*Arevalo, supra,* 244 Cal.App.4th at p. 844.)  Proposition 36 also enacted section 1170.126, which allows defendants already serving a third strike sentence for a felony that is neither serious nor violent to seek resentencing under the new rules.  (*Arevalo,* at p. 845.)  Defendants are disqualified from resentencing if, inter alia, the defendant was armed with a firearm during commission of the third strike.  (*Ibid.*)  In determining whether the defendant was armed, the resentencing court is not limited to what was specifically pleaded and proved at trial, but may make its own findings based on the record of conviction.  (*Id.* at pp. 847–848.)

The question in *Arevalo* was whether Arevalo's acquittal in a bench trial for possession of a firearm by a felon, along with a not-true finding that Arevalo was armed with a firearm, precluded the resentencing court in a section 1170.126 proceeding from finding Arevalo ineligible based on evidence in the trial record he was armed during the commission of his third strike offenses.  (*Arevalo, supra,* 244 Cal.App.4th at pp. 841–842.)  The resentencing court answered this question in the negative, in part because it believed resentencing courts were subject to the lower preponderance of the evidence standard rather than the trial standard of beyond a reasonable doubt.  (*Id.* at p. 853 ["the resentencing court relied on the disparity between 'beyond a

___

collateral estoppel to section 1172.6 proceedings.  (See *Hart, supra,* 113 Cal.App.5th at p. 1114.)

28

reasonable doubt' and 'preponderance of the evidence' standards to find Arevalo ineligible for resentencing on the basis of an arming allegation that had been pled and disproved at his earlier trial"].)

The Court of Appeal disagreed with the resentencing court. The appellate court held ineligibility determinations under section 1170.126 must be beyond a reasonable doubt. (*Arevalo*, *supra*, 244 Cal.App.4th at p. 852.) The court reasoned that Proposition 36 set forth a " 'parallel structure' " between its sentencing and resentencing provisions, a structure that " 'appears to contemplate identical sentences in connection with identical criminal histories,' " regardless of whether those sentences are imposed in the first instance or in a section 1170.126 resentencing. (*Arevalo*, at p. 853, italics omitted.) If a resentencing court were subject to a lesser standard of proof than the finder of fact at trial, "nothing would prevent the [resentencing] court from disqualifying a defendant from resentencing eligibility consideration by completely revisiting an earlier trial, and turning acquittals and not-true enhancement findings into their opposites." (*Ibid.*) The court held this result would violate the parallel structure of Proposition 36, "leaving Arevalo ineligible for resentencing while a newly convicted defendant with an identical criminal history would be found eligible for a [lesser] prison sentence." (*Ibid.*)

The *Arevalo* court concluded, "Under the applicable beyond a reasonable doubt standard, Arevalo's acquittal on the weapon possession charge and the not-true finding on the allegation of being armed with a firearm, preclude a finding that he is ineligible for resentencing consideration." (*Arevalo, supra,* 244 Cal.App.4th at p. 853.)

In *People v. Frierson* (2017) 4 Cal.5th 225 (*Frierson*), our Supreme Court agreed with *Arevalo* that reasonable doubt was

29

the correct standard of proof under section 1170.126, but did not have occasion to address the preclusive effect of trial findings. (*Frierson*, at p. 230.) *Frierson* rejected the People's argument the reasonable doubt standard put the prosecution at an unfair disadvantage " 'merely because of the happenstance that the prosecution, having no need to prove [the ineligibility] factor years ago, made a less than complete record.' " (*Id.* at p. 238.) The high court stated, "[N]othing in [Proposition 36's] language suggests the electorate contemplated that a lower standard of proof should apply at resentencing to compensate for any potential evidentiary shortcoming at a trial predating [Proposition 36]." (*Frierson*, at p. 238.)

Piper, similar to *Arevalo*, held a jury's acquittals on firearm possession offenses and not-true findings on arming enhancements precluded the resentencing court in a section 1170.126 proceeding from finding the defendant was armed while committing his third-strike offenses. (*Piper*, *supra*, 25 Cal.App.5th at pp. 1010, 1015–1016.) *Piper* reasoned, "Under *Frierson* and *Arevalo*, on a resentencing petition, the trial court may not make an eligibility determination contrary to the jury's verdict and findings. To do so would allow the People, contrary to [Proposition 36], to 'compensate for any potential evidentiary shortcoming at a trial predating [Proposition 36].' [Citation.] It also would allow a trial court . . . to 'turn[ ] acquittals and not-true enhancement findings into their opposites.' [Citation.]" (*Piper*, at p. 1015, quoting *Frierson*, *supra*, 4 Cal.5th at p. 238, and *Arevalo*, *supra*, 244 Cal.App.4th at p. 853.)[6]

---

[6] *Piper* observed that some weapon enhancements require proof that the defendant not only *possessed* the weapon while committing the offense (a "temporal nexus") but also *used* the

30

### ii. Cooper*'s application of* Arevalo *and* Piper

The Court of Appeal in *Cooper* found the analysis of *Arevalo* and *Piper* applicable in the section 1172.6 context because Senate Bill No. 1437, like Proposition 36, "created a 'parallel structure' [citation] between its amendments to existing law (§§ 188 and 189 governing liability for murder) and its resentencing provisions [citation]." (*Cooper*, *supra*, 77 Cal.App.5th at p. 415.) "Thus, Senate Bill 1437 also 'reflects an intent that sentences imposed on individuals with the same criminal history be the same, regardless of whether they are being sentenced or resentenced.' [Citation.]" (*Cooper*, at p. 415.)

Following *Arevalo* and *Piper*, the Cooper court articulated its inquiry as "whether, in light of the evidence and arguments at trial, Cooper's acquittal of the firearm-possession count 'constituted [a] finding[ ] inconsistent with' the trial court's theory that he was a major participant in the kidnapping who acted with reckless indifference to human life." (*Cooper*, *supra*, 77 Cal.App.5th at pp. 416–417.) The court summarized the prosecution's arguments at trial that Cooper possessed a firearm during the underlying offenses. (*Id.* at p. 417.) "The acquittal establishes that the jury rejected these arguments and was not

---

weapon (a "facilitative nexus"). (*Piper*, *supra*, 25 Cal.App.5th at p. 1015.) *Piper* acknowledged not-true findings on such allegations would not necessarily preclude a finding the defendant was armed for purposes of ineligibility under section 1170.126, a finding that requires only a temporal nexus. (*Ibid.*) *Piper* concluded, however, that on the facts of the case "the jury's acquittals constituted findings inconsistent with either a facilitative or temporal nexus between appellant and any firearm." (*Ibid.*) *Piper*'s discussion of facilitative and temporal nexuses is not pertinent to our analysis.

31

convinced beyond a reasonable doubt that Cooper possessed a firearm, much less fired one. Yet the trial court, also applying the reasonable-doubt standard and considering the same evidence . . . , found that Cooper *did* possess and fire a firearm, and explicitly relied on this finding to determine he was a major participant. Thus, in contravention of *Arevalo* and *Piper*, the court effectively turned Cooper's acquittal "into [its] opposite[ ].' [Citation.]" (*Cooper*, at p. 417.)

The *Cooper* court remanded the matter for the resentencing court to hold a new evidentiary hearing. (*Cooper*, *supra*, 77 Cal.App.5th at pp. 418–419.) The Court of Appeal instructed, "In doing so, the [resentencing] court shall not rely on any evidence admitted during the trial that contradicts the jury's finding that the prosecution failed to prove beyond a reasonable doubt that Cooper possessed a firearm." (*Id.* at p. 419.)

### iii.    Analysis

The problem with reading *Cooper* to suggest that *Arevalo* and *Piper* provide a basis for preclusion distinct from collateral estoppel is that those cases do not, in fact, articulate a new basis for preclusion.

*Arevalo* devoted almost its entire discussion to the question of the appropriate standard of proof in a Proposition 36 resentencing hearing. This is understandable, because the resentencing court justified its departure from the trial findings by applying, erroneously, a lesser standard of proof than the trial court had. It was in the context of explaining why the reasonable doubt standard applies that *Arevalo* referred to the " 'parallel structure' " of Proposition 36's sentencing and resentencing provisions, and the concern that if the resentencing court were subject to a lower standard of proof, it could "revisit[ ] an earlier

trial[ ] and turn[ ] acquittals and not-true enhancement findings into their opposites." (*Arevalo*, *supra*, 244 Cal.App.4th at p. 853.)

Having established the proper standard of proof, *Arevalo* held, without further explanation, "Under the applicable beyond a reasonable doubt standard, Arevalo's acquittal on the weapon possession charge and the not-true finding on the allegation of being armed with a firearm, preclude a finding that he is ineligible for resentencing consideration." (*Arevalo*, *supra*, 244 Cal.App.4th at p. 853.) *Arevalo* articulated no basis for this conclusion. Again, *Arevalo*'s discussion of "parallel structure" and "turning acquittals and not-true enhancement findings into their opposites," on which *Cooper* relied, pertained to the standard of proof, not issue preclusion. (See *Arevalo*, at p. 853; *Cooper*, *supra*, 77 Cal.App.5th at pp. 415, 417.)

There is no reason to think, therefore, the *Arevalo* court was applying anything other than standard principles of collateral estoppel. That is, it implicitly found that the trial court's acquittals and not-true findings necessarily decided the issue of Arevalo's weapon possession, and that issue was identical to the question before the resentencing court, i.e., was Arevalo armed when he committed his offenses. Certainly there is no indication the *Arevalo* court intended to break new ground in developing a theory of preclusion.

*Piper* justified its preclusion holding by quoting *Frierson*'s statement that voters did not intend, through Proposition 36, to allow the prosecution to " 'compensate for . . . evidentiary shortcoming[s] at . . . trial,' " and *Arevalo*'s concern that resentencing courts would " 'turn[ ] acquittals and not-true enhancement findings into their opposites.' [Citation.]" (*Piper*, *supra*, 25 Cal.App.5th at p. 1015.) Those statements in *Frierson* and *Arevalo*, however, were in support of those cases' holdings that the resentencing court should apply the same standard of

33

proof as the trial court, and did not pertain to the question of preclusion. Again, apart from the standard of proof issue, *Arevalo* did not explain its preclusion holding, and *Frierson* did not address preclusion at all. Thus, as in *Arevalo*, there is nothing in *Piper* suggesting a new theory of preclusion distinct from traditional collateral estoppel.

In short, nothing in *Arevalo* or *Piper* suggests courts in section 1172.6 proceedings may evade the traditional requirements of collateral estoppel, requirements articulated and illustrated in *Santamaria*, as well as *Strong* and *Curiel*.

Further, we disagree with *Cooper* that *Arevalo*'s and *Piper*'s preclusion analysis applies to section 1172.6 proceedings. The questions confronting the resentencing courts in *Arevalo* and *Piper* differ from those in section 1172.6 cases, and therefore the collateral estoppel analysis differs accordingly. In *Arevalo* and *Piper*, the question before the resentencing court was whether the defendant was armed during the commission of the offense. This was effectively the same question put to the finder of fact at trial when deciding whether to convict the defendant of firearm possession charges or to find firearm enhancement allegations true. Thus, the very question before the resentencing court in *Arevalo* and *Piper* had necessarily been litigated and decided at trial, precluding the resentencing court from reaching a contrary conclusion.[7] This is consistent with *Santamaria*, which noted the jury's not-true finding on a weapon enhancement precluded the

_____

[7] This is not to say there cannot be circumstances in which the questions at issue in deciding a weapons charge or enhancement differ sufficiently from the question of whether a defendant was armed that preclusion would not apply, as *Piper* acknowledged (see fn. 6, *ante*).

34

prosecution from realleging the enhancement on retrial. (*Santamaria*, *supra*, 8 Cal.4th at p. 910.)

In *Cooper* and the instant case, however, the question before the resentencing court was not whether the defendant was armed, but whether he was guilty of murder under current law. *Santamaria* held a jury's not-true finding on a weapon enhancement does not, in a future proceeding, preclude murder theories requiring weapon use. Thus, the bases for preclusion in *Arevalo* and *Piper* are absent in the instant case.

*Cooper* does not discuss *Santamaria* apart from quoting it when explaining the relationship between double jeopardy protection and collateral estoppel. (*Cooper*, *supra*, 77 Cal.App.5th at p. 412.) *Cooper* itself therefore does not explain why *Santamaria* should not apply. For all these reasons, we decline to follow *Cooper*.

### b.    Other contrary authority

*People v. Henley* (2022) 85 Cal.App.5th 1003 relied on *Cooper* to hold a jury's not-true finding on a firearm use enhancement precluded the resentencing court in a section 1172.6 proceeding from finding defendant was armed. (*Henley*, at p. 1020.) The only significant difference between *Henley* and *Cooper* is that in *Henley*, the parties introduced new evidence at the resentencing hearing. (*Henley*, at p. 1019.) The *Henley* court held this did not distinguish the case from *Cooper* because none of the new evidence pertained to the question of whether the defendant was armed. (*Henley*, at pp. 1019–1020.) *Henley* does not cite or discuss *Santamaria*. We decline to follow *Henley* for the same reasons we decline to follow *Cooper*.

In *People v. Arnold* (2023) 93 Cal.App.5th 376 (*Arnold*), a witness at trial testified she saw five men hitting the victim. (*Id.* at p. 380.) The victim broke free and ran, and defendant Arnold

35

chased him down. (*Ibid*.) The witness saw Arnold "hit the victim in the stomach several times." (*Ibid*.) The witness did not see anything in Arnold's hand. (*Ibid*.) The victim died from 13 stab wounds. (*Ibid*.) A jury convicted Arnold of second degree murder but found the allegation that he personally used a knife not true. (*Id*. at p. 381.) During a later section 1172.6 proceeding, the resentencing court found Arnold guilty as the actual killer and denied resentencing. (*Id*. at pp. 381–382.)

The Court of Appeal reversed, holding the jury's not-true finding on the knife use enhancement precluded the resentencing court from finding Arnold was the actual killer. (*Arnold*, *supra*, 93 Cal.App.5th at p. 379.) *Arnold* declined to resolve the parties' dispute as to whether *Cooper* or collateral estoppel applied, because "both compel the same result." (*Arnold*, at p. 385.) The court found, as in *Cooper*, the resentencing court's knife use finding "undoubtedly contradicted the jury's prior finding." (*Arnold*, at p. 385.) The court further found collateral estoppel applied: "The jury found the knife use allegation not true. Per the instructions given, it had to assess whether the prosecution proved beyond a reasonable doubt that defendant 'intentionally . . . str[uck]' the victim with a knife. The [resentencing] court considered the exact same issue at the section 1172.6 hearing, where it determined 'beyond a reasonable doubt that [defendant] stabbed the victim.' " (*Id*. at pp. 386–387.)

The *Arnold* court concluded *Santamaria* was distinguishable. (*Arnold*, *supra*, 93 Cal.App.5th at p. 388.) The court explained, "[T]he issue sought to be precluded in *Santamaria* differs significantly from the issue defendant seeks to preclude here. In this appeal, defendant argues that the prior not true finding on the knife use allegation precludes the trial court from finding, beyond a reasonable doubt, that he stabbed the victim. Conversely, the *Santamaria* defendant tried to

36

preclude the prosecution from retrying him on any theory involving his *potential* use of a knife." (*Arnold*, at p. 388.) "In the former scenario, the issue sought to be precluded is identical to the issue the jury decided in its not true finding. In the latter, it is not." (*Ibid.*)

We do not agree the issue sought to be precluded in *Santamaria* differed from that in *Arnold*. In both cases the prosecution charged the defendants with murder and alleged a knife use enhancement. In both cases there was evidence of more than one possible direct perpetrator of the killing — Santamaria or Nubla in *Santamaria* and Arnold or one or more of the other men striking the victim in *Arnold*. In both cases juries convicted the defendants of murder but found the knife use enhancements not true. In both cases the defendants argued the not-true finding precluded the prosecution from asserting in a future proceeding the defendant had killed the victim with a knife.

On these facts, *Santamaria* rejected the defendant's argument and held a jury's not-true finding on a weapon use enhancement did not preclude the prosecution from arguing on retrial the defendant was guilty of murder either as the actual killer or an aider and abettor. In other words, all theories of murder remained on the table during retrial despite the not-true findings in the first trial. This means the jury on retrial was not precluded from convicting the defendant on the theory the defendant stabbed the victim. By analogy, the resentencing court in *Arnold*, sitting as the finder of fact just as a jury would on retrial, would not be precluded from finding the defendant guilty as the actual killer, despite the jury's not-true finding on the knife use enhancement.

Further, as noted by *Hart*, *Arnold* did not address *Santamaria*'s holding that weapon use is not an ultimate fact of murder. (*Hart, supra,* 113 Cal.App.5th at p. 1112.)

37

In *People v. Lopez-Barraza* (2025) 110 Cal.App.5th 1227 (*Lopez-Barraza*), a jury convicted the defendant of murder and robbery, but acquitted him of conspiracy to commit robbery. (*Id.* at pp. 1231–1232.) In a later section 1172.6 proceeding, the resentencing court found the defendant was a major participant in the robbery and acted with reckless indifference to life. (*Lopez-Barraza*, at p. 1237.) The resentencing court based this conclusion in part on findings that the defendant "knew about and participated in planning the robbery" that led to the killing. (*Ibid.*) The Court of Appeal reversed, relying on *Cooper* to hold defendant's acquittal of conspiracy to commit robbery precluded a finding the defendant planned the robbery. (*Lopez-Barraza*, at pp. 1250–1251.)

*Lopez-Barraza* distinguished *Santamaria*. (*Lopez-Barraza*, *supra*, 110 Cal.App.5th at p. 1247.) The Court of Appeal read *Santamaria* to "reflect[ ] concern with fairness to the prosecution where a defendant is being retried for the same offense due to procedural errors at the first trial." (*Lopez-Barraza*, at p. 1247.) In contrast, "[t]he determinations a resentencing court is required to make under section 1172.6 are meant to ' "give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined." ' [Citation.]" (*Lopez-Barraza*, at p. 1247.) "[S]ection 1172.6 envisions that defendants entitled to resentencing will be subject to the same liability requirements as they would face if being tried for the first time under the new law — which requires the resentencing court to consider issues that were not relevant under prior law and therefore not decided." (*Lopez-Barraza*, at p. 1247.) "[S]ection 1172.6 is not meant to provide for *relitigation* of issues that *were* decided at the prior trial, however, [and therefore] the resentencing court is precluded from deciding the new issues based on factual findings that are inconsistent with facts

38

*necessarily* found by the jury." (*Lopez-Barraza*, at pp. 1247– 1248.)

*Lopez-Barraza* acknowledged that *Strong* and *Curiel* "discussed issue preclusion in the context of findings made in favor of the People." (*Lopez-Barraza, supra,* 110 Cal.App.5th at p. 1251, fn. 18.) The Court of Appeal discerned no reason "the same principles should not be applied to findings made in favor of a defendant." (*Ibid.*)

We have no quarrel with *Lopez-Barraza*'s conclusion that section 1172.6 does not permit relitigation of issues necessarily found by the jury, a conclusion consistent with *Strong* and *Curiel*. *Santamaria* provides guidance, however, as to what it means for a jury to have necessarily made a finding for purposes of issue preclusion. Specifically, *Santamaria* held that, when a jury convicts a defendant of murder but finds a weapon use allegation not true, the jury has *not* necessarily found the defendant was not the actual killer. (*Santamaria, supra,* 8 Cal.4th at p. 919.) Thus, although the not-true finding precludes imposition of a weapons enhancement, it does not preclude the finder of fact in a future proceeding from concluding the defendant was the actual killer. *Lopez-Barraza* does not justify departure from *Santamaria* in the circumstances of the case before us. *Lopez-Barraza* also does not address *Santamaria*'s "ultimate fact" holding, apart from acknowledging that holding in a footnote. (*Lopez-Barraza, supra,* 110 Cal.App.5th at p. 1246, fn. 16.)

This is not to say a defendant in a section 1172.6 proceeding may never benefit from collateral estoppel. We agree with *Lopez-Barazza* there is no reason the principles of issue preclusion articulated in *Strong* and *Curiel* should not apply equally to findings made in favor of a defendant. In the case before us, however, the jury's not-true findings on the weapon enhancement and special circumstance do not satisfy the

39

elements for collaterally estopping the resentencing court from finding defendant to be the actual killer.

*People v. Harrison* (2021) 73 Cal.App.5th 429 (*Harrison*) is not a case about collateral estoppel, but instead section 1172.6, subdivision (d)(2).[8] That subdivision provides, in relevant part, "If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (§ 1172.6, subd. (d)(2).)

In *Harrison*, the resentencing court denied Harrison's section 1172.6 petition at the prima facie stage. (*Harrison*, *supra*, 73 Cal.App.5th at p. 436.) The Court of Appeal held this was error because the record of conviction did not conclusively establish ineligibility. (*Id.* at p. 438.)

As for disposition, the Court of Appeal held Harrison's acquittal at trial of a special circumstance requiring major participation and reckless indifference satisfied section 1172.6, subdivision (d)(2) and entitled Harrison to immediate resentencing without need for an evidentiary hearing. (*Harrison*, *supra*, 73 Cal.App.5th at pp. 435, 442.) The appellate court rejected the argument that under *Santamaria*, the not-true finding on the enhancement did not preclude the resentencing court from finding Harrison guilty as a major participant who acted with reckless indifference, reasoning that *Santamaria* concerned traditional collateral estoppel rather than section 1172.6, subdivision (d)(2). (*Harrison*, at p. 442.) The appellate

---

[8] At the time *Harrison* was decided the statute was numbered section 1170.95, subdivision (d)(2), but the relevant language in that former subdivision remains in the current version.

court further distinguished *Santamaria* because, unlike the "split jury verdict" in *Santamaria*, the trial court in *Harrison*, ruling following a bench trial, "specifically found that Harrison was not the actual killer, did not have the intent to kill [the victim], did not act with reckless indifference to human life, and was guilty of murder as an accomplice to robbery under the felony-murder rule." (*Harrison*, at p. 442.) "The trial court ascertained precisely what Harrison did and rendered in no uncertain terms its view of the legal consequences that followed." (*Ibid.*)

The trial findings that defendant here argues are preclusive do not concern whether defendant was a major participant acting with reckless indifference, but rather whether he personally used a weapon or personally killed the victim. Thus, section 1172.6, subdivision (d)(2) and *Harrison* interpreting that section are not controlling or instructive here.

### 4.    Defendant's arguments

In an attempt to distinguish *Santamaria*, defendant argues: "The issue here is not what theory the jury must have relied upon for the initial conviction. Rather, the issue is what specific fact was necessarily decided by the 'not true' finding on the personal use allegation. The 'not true' finding here necessarily decided that appellant did not personally use a firearm. This is a concrete, negative factual finding, not merely an ambiguity about a general verdict." Defendant analogizes to the trial court's findings in *Harrison*, which "eliminated all possible bases for conviction under current law."

We see no difference between the not-true finding in *Santamaria* and the not-true finding here. In both cases, juries did not find beyond a reasonable doubt the defendant used a weapon in committing the offense. *Santamaria* held this did not mean the jury necessarily decided the defendant was guilty solely

41

as an aider and abettor, and therefore the prosecution was not collaterally estopped from arguing an actual-killer theory on retrial.  On this point, the instant case is indistinguishable.  The jury's not-true finding on the firearm enhancement is not comparable to the findings in *Harrison*, in which the court in a bench trial did not merely find the special circumstance not true, but affirmatively stated its finding that Harrison was not the actual killer.  (See *Harrison*, *supra*, 73 Cal.App.5th at p. 442.)

Defendant states, "The prosecution in *Santamaria* had proven the defendant's guilt to the first jury's satisfaction, and the reversal resulted from trial error unrelated to the sufficiency of the evidence.  In contrast, section 1172.6 embodies a legislative determination that certain prior convictions are no longer valid under ameliorative changes to the law of murder."

To the extent procedural differences between proceedings could potentially affect how collateral estoppel applies in each, that is not the case here, as we have explained.  In both *Santamaria* and the instant case, the finder of fact — either a jury on retrial or a resentencing court — must determine anew if the defendant is guilty of murder beyond a reasonable doubt, limited by whatever ultimate facts the jury necessarily decided in the original trial.  *Santamaria* establishes a jury's not-true finding on a weapon enhancement does not limit the theories the finder of fact may consider in a future proceeding, because the jury in reaching that not-true finding has not necessarily decided the defendant was not the actual killer, and weapon use is not an ultimate fact of murder.

Defendant argues that although *Santamaria* held weapon use is not an ultimate fact to prove murder, "personal use becomes an ultimate fact when it is the sole basis for a particular theory of guilt."  Defendant contends knife use was not an ultimate fact in *Santamaria* because the defendant in that case

42

could be convicted under multiple theories, some of which did not require that the defendant used a knife. Here, in contrast, "the prosecution's actual killer theory depends entirely on appellant being the shooter. There is no evidence that anyone other than the shooter killed the victim. Personal use of the firearm is therefore not merely an evidentiary fact but the essential element of the prosecution's actual killer theory."

This argument echoes Justice Mosk's dissent in *Santamaria*, which defendant urges us to follow. Justice Mosk stated, "[P]ersonal use of a knife is a necessary fact for the unlawful-act element of the crime of murder *insofar as guilt is predicated on a theory dependent thereon.*" (*Santamaria, supra,* 8 Cal.4th at p. 932 (dis. opn. of Mosk, J.).) Justice Mosk concluded from this that, although the jury's not-true finding did not preclude the prosecution on retrial from attempting to prove Santamaria was the direct perpetrator of the killing, it did preclude the prosecution "from attempting to prove that he was guilty as a principal under the theory that he was a direct and active perpetrator *solely by personally using a knife.*" (*Ibid.*)

We are bound by the majority opinion in *Santamaria.* (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We may presume the majority rejected Justice Mosk's position in dissent, because the majority held "collateral estoppel does not apply," and placed no limits on the evidence or arguments the prosecution could offer on retrial of the murder charge. This means the majority also placed no limits on the theories under which the jury could convict Santamaria of murder. Similarly, in the instant case, the not-true findings at trial neither precluded the prosecution from arguing defendant was the actual killer nor the resentencing court from convicting on that basis.

43

Defendant argues the fact the parties did not introduce new evidence at the evidentiary hearing distinguishes this case from *Santamaria*. Defendant explains, "The absence of new evidence demonstrates that the [resentencing] court is simply relitigating an issue the jury decided based on a different assessment of the same evidence — precisely what issue preclusion is designed to prevent." Defendant is incorrect that the parties here are "relitigating an issue the jury decided," because under *Santamaria*'s reasoning, the not-true findings on the weapon enhancement and robbery special circumstance are not equivalent to a finding defendant was not the actual killer. The question for collateral estoppel purposes is not whether the resentencing court is relying on different evidence than that before the jury, but whether the resentencing court is deciding different questions than the jury necessarily decided. Under *Santamaria*, defendant's jury never necessarily decided he was not the actual killer.

Defendant argues the jury "unanimously found that [defendant] was not the person who pulled the trigger and killed Toney Lewis," and it "would violate principles of fundamental fairness" to allow a resentencing court, on a cold record 40 years after the fact, to reach a contrary conclusion. Defendant's premise is incorrect. Again, under *Santamaria*, the jury's not-true findings on the weapon enhancement and robbery special circumstance are not equivalent to a unanimous finding defendant was not the actual killer, and therefore the resentencing court's finding that defendant personally killed the victim is not a contrary conclusion to that reached by defendant's jury.

In sum, neither the authorities cited by defendant nor defendant's arguments persuade us not to follow *Santamaria* and *Hart*.

44

## C. Substantial Evidence Supports the Resentencing Court's Finding Defendant was the Actual Killer

Having concluded the jury's verdict did not preclude the resentencing court from finding defendant was the actual killer, the next question is whether the record supports that finding. We hold it does.

### 1. Standard of review

We review a resentencing court's denial order following a section 1172.6 evidentiary hearing for substantial evidence. (See *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) Under that standard, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Grandberry* (2025) 116 Cal.App.5th 934, 946 (*Grandberry*).) "We resolve all evidentiary conflicts and questions of credibility in favor of the judgment. [Citation.] We cannot reweigh the evidence or reassess witness credibility on our own." (*Ibid.*)

Defendant acknowledges case law holding the substantial evidence standard applies. (See *People v. Underwood* (2024) 99 Cal.App.5th 303, 313–314 (*Underwood*) [collecting cases]). Defendant argues these cases were wrongly decided, and we should instead independently review the evidence. Defendant contends deference to the resentencing court's findings is unwarranted because the court relied entirely on a cold trial record, which defendant argues this court is equally competent to review.

In support, defendant cites *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), which concerned the standard of review

45

for grants or denials of motions under section 1473.7.  (*Vivar*, at pp. 523–524.)  That statute requires trial courts to "vacate a conviction or sentence upon a showing, by a preponderance of the evidence, of 'prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.'  (§ 1473.7, subds. (e)(1), (a)(1).)" (*Vivar*, at p. 523.)

Our Supreme Court concluded decisions on section 1473.7 motions are subject to independent review:  "Whether counsel's advice regarding immigration was inadequate and whether such inadequacy prejudiced the defense, while mixed questions, are predominantly questions of law.  [Citation.]  Accordingly, we review such rulings independently [citation], and rightly so, given the profound and substantial consequences of a prejudicial misadvisement on a defendant's life."  (*Vivar*, *supra*, 11 Cal.5th at p. 524, fn. omitted.)

The Supreme Court further reasoned that the Courts of Appeal historically had applied independent review to section 1473.7 decisions, and the Legislature, in subsequently amending the statute, did not " 'signal an intent to supersede' the standard of review the Court of Appeal had already articulated." (*Vivar*, *supra*, 11 Cal.5th at p. 525.)  The high court also noted section 1473.7 motions "are ordinarily brought many years after the plea," and thus "the judge adjudicating the resulting motion may never have participated in any of the underlying proceedings and must rely entirely on a cold record."  (*Vivar*, *supra*, at pp. 526–527.)  "So our embrace of independent review in this context is a product of multiple factors with special relevance here:  the history of section 1473.7, the interests at stake in a section 1473.7 motion, the type of evidence on which a section 1473.7 ruling is likely to be based, and the relative competence of

46

trial courts and appellate courts to assess that evidence." (*Vivar*, at p. 527.)

Defendant argues the factors relied upon by the high court in *Vivar* similarly support independent review here. Defendant contends the interests at issue in a section 1172.6 proceeding are even greater than in a section 1473.7 proceeding, because deportation "pales in comparison with spending one's entire life in prison." Further, section 1172.6 rulings, like section 1473.7 rulings, are likely to be decided on documentary evidence as opposed to live testimony, "and trial and appellate courts are in the same position to evaluate them."

We disagree that independent review is the appropriate standard. As other Courts of Appeal have observed, *Vivar* "emphasized that the questions raised by a section 1473.7 motion, 'while mixed questions, are predominantly questions of law' [citation]," whereas the question whether a defendant committed murder beyond a reasonable doubt is largely a factual determination. (See *People v. Clements* (2022) 75 Cal.App.5th 276, 301–302 (*Clements*); see also *Underwood, supra,* 99 Cal.App.5th at p. 314.) Indeed, as already discussed, the resentencing court serves a purpose very much like that of a jury in a retrial, and jury findings are reviewed for substantial evidence. (See *People v. Alvarez* (2025) 18 Cal.5th 387, 470.)

In holding substantial evidence review applies to section 1172.6 evidentiary findings, courts also have observed the Supreme Court has mandated substantial evidence review in the analogous context of resentencing under Proposition 36, even though Proposition 36 resentencing courts " 'do not have an advantage over appellate courts in determining eligibility based on the record of conviction.' [Citation.]" (See *People v. Oliver* (2023) 90 Cal.App.5th 466, 479, quoting *People v. Perez* (2018) 4 Cal.5th 1055, 1066.) As our Supreme Court explained

regarding Proposition 36, "[E]ven if the [resentencing] court is bound by and relies solely on the record of conviction to determine eligibility, the question whether a defendant was armed with a deadly weapon during his or her current offense remains a question of fact, and we see no reason to withhold the deference generally afforded to such factual findings." (*Perez*, at p. 1066; see *Oliver*, at p. 479.) We similarly see no reason not to afford deference to the resentencing court's findings under section 1172.6.

### 2. Analysis

Substantial evidence supports the resentencing court's finding defendant was the actual killer. Fonteno testified defendant shot Lewis, and the resentencing court found that testimony credible. (See *People v. Barnwell* (2007) 41 Cal.4th 1038, 1052 ["Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the [substantial evidence] standard is sufficient to uphold the finding"]; accord, *People v. Werntz* (2023) 90 Cal.App.5th 1093, 1117, fn. 9.)

Supporting Fonteno's testimony was the testimony of Annette Aldrige, Marcus's girlfriend, and Tylon Player, defendant's and Marcus's sister. Aldrige testified defendant told her Marcus was not involved in the murder, and defendant also told her everyone knew that defendant had done it. Aldrige also told police defendant had told her he was the killer. Tylon testified defendant told her Marcus was not the killer.

Defendant argues Spence was "[t]he only eyewitness to the shooting," and the resentencing court erred in rejecting her testimony. Defendant notes Fonteno received a favorable plea for his testimony, and "had every incentive to shift blame to [defendant] rather than Marcus, with whom [Fonteno] was

48

apparently closer." Defendant observes the jury, who had the opportunity to assess the witnesses' demeanor, "clearly harbored reasonable doubt about Fonteno's account, hence the not true finding on personal firearm use." Defendant challenges Aldrige's credibility, and contends defendant's statements to Tylon were ambiguous and consistent with "a brother's protectiveness."

We are unclear why defendant claims Spence was the only eyewitness to the shooting when Fonteno was there as well. The remainder of defendant's arguments go to witness credibility, which, under the substantial evidence standard, is the province of the finder of fact, in this case the resentencing court. (*Grandberry*, *supra*, 116 Cal.App.5th at p. 946 ["We cannot reweigh the evidence or reassess witness credibility on our own."].)

Because we conclude substantial evidence supports the finding defendant was the actual killer, and he therefore remains guilty of felony murder under current law (see § 189, subd. (e)(1)), we do not reach the question whether substantial evidence supported the finding that defendant was a major participant in the robbery and acted with reckless indifference to human life.

## DISPOSITION

The order denying resentencing is affirmed.
<u>CERTIFIED FOR PUBLICATION.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.